# SAMUEL & STEIN

A T T O R N E Y S   A T   L A W

38 West 32nd Street, Suite 1110, New York, NY 10001
Phone: (212) 563-9884 | Fax: (212) 563-9870 | Website: www.samuelandstein.com

| | | |
|---|---|---|
| **David Stein**<br>dstein@samuelandstein.com | June 1, 2020 | Admitted in<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Barbara Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

   **Re:**  <u>**Soner Deran v. Antalia Turkish Cuisine LLC, et al.**</u>
      *Case Number 19-cv-6833 (BCM)*

Dear Magistrate Judge Moses:

  We represent plaintiff Soner Deran in the above-captioned matter and submit this letter to the Court with the consent of Michael Chong, Esq., counsel for defendants, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

  Mr. Deran filed his complaint in this matter on July 23, 2019. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid minimum wage and overtime pay, as well as claims solely under the New York Labor Law for failure to pay spread of hours pay, unlawful tip retention, failure to provide wage notices and failure to provide wage statements.

  Specifically, Mr. Deran alleged that he was employed by defendants as a waiter for roughly two years between July 2016 and May 2019. His schedule changed from week to week throughout his employment, but he generally worked between five and ten shifts per week. The restaurant had two shifts — an early shift that started at 11 or 11:45 and went to 3:30 or 4, and a later shift that went from 3:30 to close. He worked a mixture of early shifts and late shifts, including double shifts on occasions. Plaintiff alleges that although "close" was nominally at 10:00 p.m., he rarely left before 11:00 p.m. As a result, Mr. Deran alleges that he generally worked between 20 and 40 hours per week, though he did occasionally work more than 40 hours.

Nevertheless, Mr. Deran alleges that rather than being paid for the hours he worked, he was paid only a nominal amount of money as shift pay — an amount that left his effective rate of pay as being substantially below the minimum wage. And because he was paid only shift pay, he never received overtime premiums or "spread of hours" premiums. He alleges that he was paid entirely in cash with no paperwork. Nor did he receive a wage statement when he was hired (or at any other time) reflecting the terms of his compensation. Finally, he alleges that defendants routinely retained a substantial portion — 10% — of the tips customers left on credit cards .

Based on these facts, Mr. Deran calculated his estimated damages as follows, if he prevailed at trial on *all* of his claims: $30,000 in actual minimum wage and overtime damages under the FLSA and NYLL (and a like amount in liquidated damages), $2,000 in spread of hours damages (and a like amount in liquidated damages), $4,000 in damages for unlawfully retained tips (and a like amount in liquidated damages), and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs. In other words, Mr. Deran would have been owed $82,000. In addition, he would be entitled to an award of reasonable attorneys' fees and costs under both the FLSA and NYLL.

Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle Mr. Deran's claims against defendants for a total of $50,000. While the final settlement amount is less than his maximum possible recovery, we believe this to be a fair resolution to this matter, due to bona fide disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants dispute the number of hours Mr. Deran worked, as well as the manner in which he was paid. Both sides agree about his schedules, but they disagree about the number of hours he actually worked, because Mr. Deran contends that a closing shift ended significantly later than defendants claim. If defendants' records were believed, plaintiff would have been credited with working only about ⅔ as much as he calculated (which would have reduced his total recovery to only about $59,000.). Defendants also produced documents that purported to show that he was paid at an hourly rate rather than by shift pay. Plaintiff denied ever having seen these documents before, and they do not contain his signature or anything to prove that he had. Nevertheless, he would have had to overcome their existence in order to prevail in this matter.

He believes he could have done so, and that other employees would have corroborated his claims, but he did not have any records of his own, which would have made it more of a challenge, and would have prevented a resolution short of a swearing contest at trial. Moreover, collectability was an issue even *before* coronavirus struck, and — as the Court is aware from the detour that the parties took before achieving this settlement — would have presented an even bigger challenge now, if he had chosen to litigate this case to trial.

By agreeing to settle at this juncture, Mr. Deran was able to gain a significant percentage of the damages he was potentially owed, without the delay of waiting for trial or the risks attendant with trial. Moreover, should defendants default, he will be entitled to significantly

more than the original settlement amount. Thus, he decided to accept defendants' offer, even with the longer installment plan that defendants insisted upon.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is about 60% of his maximum possible damages, and he will receive these funds without running any risk in terms of proving his claims. Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, plaintiff is protected by a confession of judgment for 170% of the settlement amount, in the event of a default due to coronavirus or any other reason.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y.

Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and in consultation with plaintiff they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiff no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $652.50 (filing fee of $400, service of process of $247, and subway fare to and from court of $5.50)[1] and will retain 1/3 of the net settlement (i.e., an additional $16,449.17) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process are attached as Exhibit C.

attorneys' fee amount of approximately 1.05 times our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $425 | 24.00 | $9747.50 |
| David Nieporent | Senior Associate | $325 | 18.50 | $5,882.50 |
| **TOTAL** | | | **42.50** | **$15,630.00** |

A copy of our time records, maintained contemporaneously, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation").

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. Travel time was billed, as per firm policy, at half the attorney's regular rate.

And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we have recently been awarded fees of $375 and $325 in wage and hour cases, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 18-cv-182 (ARR), Docket Entry 13 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* Docket Entry 14 (E.D.N.Y. Sept. 13, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith, and adjourn next week's conference *sine die*. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                                               Very truly yours,

                                                               David Stein

Enc.

cc: Michael Chong, Esq.. (via ECF)