UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 06/22/2020
```

| | |
|---|---|
| SONER DERAN, | |
| Plaintiff, | 19-CV-6833 (BCM) |
| -against- | **ORDER** |
| ANTALIA TURKISH CUISINE LLC, et al., | |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge**.

The Court has received and reviewed plaintiff's letter-application dated June 1, 2020 (Pl. Ltr.) (Dkt. No. 45), submitted "with the consent of" defendants, *id*. at 1, which seeks approval of the parties' proposed Settlement Agreement and Release (Agreement) (Dkt. No. 45-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons that follow, the settlement will be approved and the case will be dismissed.

<u>**Background**</u>

By letter dated February 25, 2020 (Dkt. No. 28), one week after their initial pretrial conference before the Hon. Gregory H. Woods, United States District Judge, the parties notified the Court that they had reached an agreement in principle to settle this single-plaintiff wage and hour case, brought pursuant to, *inter alia*, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., and on February 28, 2020, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. No. 33.) The February 25 letter advised that counsel "expect[ed] to be in a position to submit everything by March 9, 2020." That was not to be.

On April 1, 2020, defendants requested and received an extension of time, until May 1, 2020, to finalize their settlement documents. (Dkt. No. 37.) Thereafter, in a series of letters from May 4 through May 18, 2020 (Dkt. Nos. 38, 40, 41, 43), the parties discussed a variety of obstacles, many of them related to the COVID-19 pandemic and related public health measures, that stood

in the way of finalizing their settlement. These issues were further discussed during a telephonic conference with the Court on May 21, 2020, after which I set a new deadline of June 1, 2020 for the submission of their fully-executed settlement agreement, and related materials, for *Cheeks* review. (Dkt. No. 44.) The parties met that deadline by submitting their June 1 letter-application along with the fully-executed Agreement and copies of the time and expense records of plaintiff's counsel. (Dkt. Nos. 45-2, 45-3.)

## The Agreement

Plaintiff Soner Deran worked as a waiter from July 2016 through October 2017, and then again from September 2018 through May 2019, at Antalia, a restaurant owned and/or operated by defendants Antalia Turkish Cuisine, LLC, AntaliaNYC, Inc., and Serhat Cetinkaya.  Compl. (Dkt. No. 1) ¶¶ 25-26. Under the Agreement, defendants will pay a total of $50,000 to settle Deran's claims under the FLSA and the New York Labor Law (NYLL). Ag. ¶ 1(a). The settlement consideration will be paid made in eight installments: an initial payment of $15,000 will be due within 45 days after the Court approves the Agreement, followed by seven equal monthly payments of $5,000. *Id*. ¶¶ 1(b)-(d). From the total, $652.50 will go to counsel as reimbursement for costs, and $16,449.17 (one-third of the remainder) will go to plaintiff's counsel as fees, leaving $32,898.33 for Deran himself. *Id*. at 10; Pl. Ltr. at 4-5.

Plaintiff estimates his recoverable damages, should he prevail at trial, at $30,000 in unpaid minimum wage and overtime pay under the FLSA and the NYLL (and a like amount in liquidated damages); $2,000 in spread-of-hours pay (and a like amount in liquidated damages); $4,000 for unlawfully retained tips (and a like amount in liquidated damages); and $10,000 under the Wage Theft Prevention Act for failure to provide wage notices or accurate paystubs, for a total of $82,000. Pl. Ltr. at 2. Plaintiff acknowledges, however, that there are *bona fide* disputes regarding

2

the number of hours he actually worked and the manner in which he was paid. *Id*. If defendants' records are accepted as accurate, plaintiff estimates that his total recovery, including liquidated damages, would be "reduced to only around $59,000." *Id*. Additionally, plaintiff raises concerns about the collectability of any judgment obtained at trial. *Id*. at 2-3.

The installment payments are backed by an affidavit of confession of judgment, signed by defendant Serhat Centinkaya on behalf of himself and both corporate defendants, jointly and severally, in the amount of $85,000.00 (170% of the settlement amount due under the Agreement, *see* Ag. ¶ 9(c)), plus "reasonable attorneys' fees incurred in entering and enforcing the judgment," less "any monies paid by Defendants pursuant to the [Agreement]." (Dkt. No. 45-1 at ECF pages 14-15.) The Agreement contains a release of plaintiff's wage and hour claims against defendants and a general release of any claims by defendants against plaintiff. Ag. ¶¶ 2(a)-(c). The Agreement also contains a mutual non-disparagement clause limited to "false" statements by either side about the other that are derogatory, disparaging, or defamatory. *Id*. ¶¶ 8(a)-(b). The Agreement does not prohibit truthful statements, even if unflattering. The parties have also agreed that, if defendants are contacted to provide an employment reference for plaintiff, they shall provide a "neutral reference" confirming his dates of employment and other objective information, and will not mention this lawsuit. *Id*. ¶ 8(c). If specifically asked about this lawsuit, defendants "will state solely that the matter has been resolved." *Id*.

## Analysis

The Court has reviewed the terms of the Agreement and finds that they are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. The overall settlement amount (net of attorneys' fees) is lower than plaintiff's estimate of his best-case result at trial but almost 10% higher than his claim for actual unpaid wages and overtime compensation, and only slightly lower than his claim

for unpaid wages, overtime, spread-of-hours pay and retained tips. Given the inherent uncertainties of litigation, together with the existence in this case of employer records at odds with plaintiffs' assertions regarding his working time, the settlement consideration appears to be fair. Plaintiff's concerns regarding collectability – particularly given the challenges facing restaurant businesses during a public health crisis – also militate in favor of a finding that the Agreement strikes a fair compromise. *See Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *1 n.2 (S.D.N.Y. Nov. 6, 2015) ("Courts have often found that concerns over collectability arising from a defendant's financial difficulties militate in favor of finding a wage-and-hour settlement to be fair and reasonable.") (collecting cases).

The proposed fee award is also reasonable. Plaintiff's attorneys will receive $652.50 to reimburse them for the filing fee and other out-of-pocket costs incurred in connection with this action, and $16,449.17 (one third of the net settlement amount) in attorneys' fees. *See* Pl. Ltr. at 4-5; Agreement Rider (Dkt. No. 45-1 at ECF page 12); Dkt. No. 45-3. That sum is within the range historically approved in this district, s*ee Martinez v. SJG Foods LLC*, 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) (quoting *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)) ("When using a percentage of the fund approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'"),[1] and only slightly higher than counsel's lodestar of $15,630, as revealed by their timesheets. Moreover, the fee award is fair in light of the "degree of success obtained." *Fisher*, 948 F.2d at 606 (quoting *Hensley v.*

---

[1] The Second Circuit recently held that there is no "proportionality limit on recoverable attorneys' fees" in an FLSA case, and thus that the courts cannot place an automatic cap on such fees at 33%. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 602-05 (2d Cir. 2020). In this case, however, plaintiff has affirmatively requested a fee award equivalent to one third of the net settlement consideration, which presents no comparable difficulties.

*Eckerhart*, 461 U.S. 424, 436 (1983)). As noted above, the settlement represents a compromise, netting plaintiff most but not all of his alleged actual damages, *after* payment of the award to counsel, which is a reasonable result.

The Court notes that the terms of the affidavit of confession of judgment annexed to the Agreement – under which a default would always cost defendants $35,000 more than the remaining amount they owe under the Agreement at the time of the default – could be construed as an unenforceable penalty.[2] As this Court has previously observed, however, the purpose of the judicial review process mandated by *Cheeks* "is to ensure that the agreement is fair and reasonable to the *plaintiff*." *Vasquez v. La Rola Rest.*, *Inc.*, 2019 U.S. Dist. LEXIS 62090, at *4 (S.D.N.Y. Apr. 9, 2019) (emphasis in the original; internal quotations and citations omitted). Accordingly, any potential unfairness to *defendants* inherent in the affidavit of confession of judgment is not a barrier to judicial approval of the Agreement under *Cheeks* and its progeny. *Id*. Moreover, while there is a possibility that plaintiff could be disadvantaged in future enforcement proceedings by a judicial determination that the liquidated damages provision is unenforceable, *see Vasquez*, 2019 U.S. Dist. LEXIS 62090, at *6-7 (collecting cases), it would be premature for this Court to prejudge the issue in the context of a *Cheeks* review. In any event, even if plaintiff could not obtain a confessed judgment including liquidated damages, he would still have a contractual right to the settlement amount for which he bargained, together with "all reasonable attorneys' fees and costs incurred in the prosecution of any action to enforce the terms of this Agreement." Ag. ¶ 16. The

---

[2] As a practical matter, the formula set forth in the affidavit of confession of judgment would require defendants to pay a minimum default premium of 70% (if they were to default on the first scheduled payment) and a maximum default premium of 900% (if they were to default on the last scheduled payment). Under New York law, a liquidated damages provision "which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." *Truck Rent-A-Ctr, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018 (1977).

possible unenforceability of the liquidated damages provision in the affidavit of confession of judgment therefore does not undermine the fairness of the Agreement as to plaintiff. *See Vasquez*, 2019 U.S. Dist. LEXIS 62090, at *8.

<u>**Conclusion**</u>

Accordingly, the proposed settlement is **APPROVED**. It is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs. The Court will retain jurisdiction for the limited purpose of enforcing the Agreement if necessary.

The Clerk of the Court is respectfully directed to close the case.

Dated: New York, New York
      June 22, 2020

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**